O’NIELL, Chief Justice.
 

 Victor Scott sued the Citizens’ Hardware & Furniture Company, Inc., for $5,000 damages for injury to his reputation. He alleged that the defendant, through one of the company’s representatives, maliciously and without probable cause, made an affidavit accusing him of having stolen property hidden in his residence, and obtained a search warrant, on which a deputy sheriff and the representative of the company searched Scott’s residence, but did not find any of the stolen property.
 

 The company pleaded that the petition did not set forth a cause or right of action, because it was not alleged that the prosecution had terminated in favor of Scott. The exception was overruled. The company then, answering the petition, pleaded, first, that the affidavit on which the search warrant was issued was made by the sheriff and by an employee of the company, not acting within the scope of his employment; and, second, that there was probable cause for making the affidavit, and no malice on the part of those who made it. The district judge, after hearing the evidence, gave judgment for the plaintiff for $500. The defendant has appealed. The plaintiff, answering the appeal, prays for an increase of the amount of the judgment to $5,000.
 

 The exception of no cause or right of action was not well founded. It is true that an action for damages for malicious prosecution will not lie until the prosecution is terminated in favor of the party prosecuted ; but a proceeding by affidavit for a search warrant has terminated in favor of the party accused when the officer has made the search and found none of the stolen property and has made return of the warrant accordingly. Spangler v. Booze, 103 Va. 276, 49 S. E. 42, 1 Ann. Cas. 995; and note to Ton v. Stetson, 10 Ann. Cas. 372. See also Page v. Citizens’ Banking Co., 111 Ga. 73, 36 S. E. 418, 51 L. R, A. 463, 78 Am. St. Rep. 144. We are not referred to any decision contrary to the ruling in Spangler v. Booze, which appears to be founded upon authority and reason, and therefore has our approval, viz.:
 

 “An action for damages will lie for malh ciously and without probable cause procuring the issuance and execution of a search warrant for goods alleged to have been stolen; and the technical prerequisite to the right to institute such an action, that the prosecution must have terminated favorably to the plaintiff, is satisfied by the failure to find the stolen goods upon the execution of the warrant.”
 

 The appellant in this case contends that it was shown on the, trial that the proceedings which the plaintiff complains of had not terminated when the suit was filed, because the justice of the peace who issued the search warrant and the sheriff testified that
 
 *478
 
 they intended to place the affidavit and warrant before the grand jury at its next session, and because there had been no session of the grand jury subsequent to the issuance of the warrant. As the law does not require the justice of the peace or the sheriff to place before the grand jury an affidavit on which a search warrant has been issued, or the warrant itself, when the sheriff has made his return showing that the search was made and that none of the stolen property was found, and when the warrant therefore has become functus officio, if the justice of the peace or the sheriff thereafter lays the matter before the grand jury his action will be not a continuation of the proceeding which was commenced by the making of the affidavit on which the warrant was issued, but will be a renewal of the investigation. In other words, if the grand jury should hereafter indict the party whose premises were searched, for having the stolen property in his possession, or for any crime relating thereto, it will not be in consequence of the search warrant or its execution, hut in consequence of evidence otherwise discovered.
 

 The remaining question is whether the employee of the company, who, with the sheriff, made the affidavit and the search of Scott’s premises, was acting within the scope of his authority, and, if so, whether there was probable cause for his making the affidavit and the search of the premises. The facts in that connection, forming the outlines of the case, are not disputed. Some one committed burglary by entering the store of the Citizens’ Hardware & Furniture Company through a rear window, in the nighttime, and stole an electric iron, two watches and a pistol. Mr. Key, who was the manager of the store, and Mr. Buckley, who was employed as salesman and collector for the company, suspected that Scott had committed the burglary and larceny, and immediately informed the sheriff of their suspicion. The sheriff made an investigation and reported to Messrs. Key and Buckley that he had not found any evidence tending to connect Scott with the crime. A few days afterwards, that is, on the eighth day after the burglary was committed, Buckley called to deliver an article of merchandise at the residence of Mrs. Blankinship, in whose house Scott and his wife occupied an apartment as their residence, and Buckley saw an electric iron in the Scott apartment. There being no one in the room at the time, Buckley entered and examined the electric iron and found it to be apparently new and identically like the one that had been stolen from his employer’s store. Later in the day Buckley called again at Mrs. Blankinship’s house, pretending to examine her stove, and he again went into the Scott apartment and again examined the electric iron. Mrs. Blankinship was not then at home. Buckley reported to Key that he had discovered the electric iron in Scott’s apartment; and Buckley and Key called the sheriff again into consultation, and after consulting over the matter they decided to obtain a warrant and search Scott’s apartment for the stolen property. The affidavit made before the justice of the peace was signed by the sheriff and Buckley, with the sanction and approval of Key. In the affidavit the affiants declared that they had reason to believe and did believe that the residence of Scott was being used to conceal and hide an electric iron, a pistol and two watches, sto
 
 *480
 
 len from the Citizens’ Hardware & Furniture Company. A deputy sheriff and Buckley then went with the warrant to Scott’s apartment and made a thorough search of the premises. Scott was not at home, but his wife was there, ill and in bed. She made no objection to the searching of the premises, but asked the sheriff and Buckley why they had not consulted her husband about the matter. None' of the stolen property was found. The electric iron was yet there, in plain view, but, on inquiry, the sheriff and Buckley learned that Scott had been in possession of the iron continuously for a period antedating .the burglary by many months, and therefore that it was not possible for the iron to be the one that was stolen from the Citizens’ Hardware & Furniture Company. That information was obtained by questioning Mrs. Scott and Mrs. Blankinship while the search was being made, and was afterwards confirmed. Buckley and the deputy sheriff, being convinced that none of the stolen property was in Scott’s apartment, left the electric iron where they found it. Thereafter the man who committed the burglary and larceny was arrested and confessed, without implicating Scott 'or any one else in the crime, and was sentenced to a term of imprisonment in the penitentiary.
 

 There is no doubt that Key, who was the manager of the Citizens’ Hardware & Furniture Company’s business, and Buckley, an employee, acting under the instructions of Key in making the affidavit and the search of Scott’s premises, were acting for their employer and within the scope of their employment. In fact, the company has never disavowed that it was the duty of Key and Buckley to find and recover, lawfully, the goods that were stolen from the company's store. It was in the performance of that duty that these agents of the company wrongfully accused Scott of having the stolen goods- hidden in his home, and, inferentially, of having participated in the crime of burglary; and it was in the performance of that duty, and in that capacity, that these agents for the company assumed the responsibility of subjecting Scott and his wife to the humiliation and discredit of a search of their residence for the stolen goods. A corporation or a partnership cannot commit a wrong of that kind in any other way than through an individual acting as its agent A corporation or partnership, therefore, like an individual, is answerable for the consequences of a criminal prosecution instituted by an agent in the performance of one of the duties of his employment, but without probable cause for the prosecution. Lange v. Illinois Central Railroad Co., 107 La. 688, 31 So. 1003; Chicago, R. I. & P. Railway Co. v. Holliday, 30 Okl. 680, 120 P. 927, 39 L. R. A. (N. S.) 205; Page v. Citizens’ Banking Co., 111 Ga. 73, 36 S. E. 418, 51 L. R. A. 463, 78 Am. St. Rep. 144.
 

 The district judge, in a written opinion, gives a detailed review of the facts and circumstances which Key and Buckley referred to in their testimony as being what they deemed probable cause for making the affidavit and searching Scott’s residence for the stolen property; and the judge gives good, reasons and a thorough explanation why the facts and circumstances referred to did not constitute probable cause for the affidavit or the search of Scott’s residence. He had been employed as a salesman in the store of the
 
 *482
 
 Citizens’ Hardware & Furniture Company for several months when his father was employed as manager of the store; hut the employment ceased two and a half years before the burglary was committed. During his employment, young Scott was intrusted with a key to the store, and sometimes went into the store after business hours, at night, as he was allowed to do and was known to do, but he never went into the store for any unlawful purpose. There were some expressions of criticism and suspicion, in the testimony of Key and Buckley, as to the handling of certain sales and collections by Scott during his employment by the company, but there was no showing of his having committed larceny or embezzlement or any other act of dishonesty. One of the criticisms was that Scott once traded a lamp and a gun for some whisky, but it was proven and not denied that he had bought and paid for the lamp and gun. However bad his judgment may have been in making the trade, if the whisky had no commercial value to him, there was nothing essentially dishonest in the trading of a lamp and gun for whisky.
 

 The district judge, having found that there was no good reason why Key or Buckley should have regarded Scott as a man of dishonest character, rested his conclusion that there was no probable cause for the making of the affidavit, and the searching of Scott’s residence, upon the fact that Key and Buckley could have ascertained very easily and without humiliating any one, by inquiring of Scott or his wife or of Mrs. Blankinship, that the electric iron which Bqekley saw in Scott’s apartment was not the stolen iron. It would not have been necessarily in-suiting or offensive to Scott to be asked when and from whom he had bought the electric iron, which resembled the one that was stolen from the Citizens’ Hardware & Furniture Company. The inquiry could have been made without any implication that Scott had stolen the iron, or that he had any knowledge that it was the stolen iron. Such inquiries are usual and necessary in the course of a search for stolen property and tracing it to the one who stole it. That such an inquiry would have brought forth the desired information in this case is shown by the fact that the information was given immediately when Mrs. Scott and Mrs. Blankinship were asked about the iron — while the search for the stolen articles was going on. What was said in Lange’s Case, 107 La. 698, 701, 31 So. 1003, 1008, 1009, is very appropriate to this case, viz.:
 

 “Everything indicated a willingness, to submit to full investigation. Instead of giving the plaintiff the opportunity to explain the situation, to which he was entitled under the circumstances of the case, these officers [special officers of the railroad company] immediately filed an affidavit against him, charging him with crime. * * *
 

 “It will be seen that, however flexible a definition may be given to the word ‘malice,’ and how much soever the general assembly may require the presence of malice in any particular act to be a necessary factor and condition precedent to a right of action based upon that act as a fault, the absence of malice in a particular instance can never be invoked as a defense where the action is predicated upon injury done to person or reputation by a warrant issued upon the oath or af
 
 *484
 
 Urination of a party, but without the existence of probable cause. The existence of probable cause may protect a person, even though he be acting from malice; but the converse of this proposition is not true.”
 

 Our conclusion is that the affidavit made for obtaining the search warrant in this case, and the implied accusation, and the search of Scott’s premises, were made without probable cause, and that the defendant is liable in damages for the resulting humiliation to Scott and the injury to his reputation.
 

 The district judge has given very plausible reasons for fixing the amount of the damages at $500; and we see no reason why the amount allowed should be either increased or reduced.
 

 The judgment is affirmed.
 

 ODOM, J., dissents.